IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| NOVELL, INC., a Delaware corporation, Plaintiff, vs. VIGILANT INSURANCE COMPANY, a New York corporation, Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTED DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:09-CV-496 TS |

This matter is before the Court on cross motions for summary judgment concerning Vigilant's duty to defend Novell in an action in this Court. For the reasons discussed below, the Court will grant Vigilant's Motion for Summary Judgment and deny Novell's Motion for Partial Summary Judgment because the Court finds that Vigilant had no duty to defend Novell.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[1] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II. UNDISPUTED FACTS

A.  THE SCO ACTION

The SCO Group, Inc. ("SCO") filed suit against Novell, Inc. ("Novell") on January 20, 2004, in the Third Judicial District Court of Salt Lake County, State of Utah. Novell removed that action to this Court on February 6, 2004 (the "SCO action").[4]

---

[1]Fed.R.Civ.P. 56(c)(2).

[2]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[4]*The SCO Group, Inc. v. Novell, Inc.*, Case No. 2:04-CV-139 TS.

SCO's complaint contained a single cause of action for slander of title.[5] SCO alleged that it, "through its predecessor in interest, acquired from Novell all right, title, and interest in and to the UNIX and UnixWare business, operating system, source code, and all copyrights related thereto" through an Asset Purchase Agreement dated September 19, 1995.[6]

SCO alleged that "[i]n a bad faith effort to interfere with SCO's exercise of its rights with respect to UNIX and UnixWare technologies, Novell has, in disregard of its obligations under the Asset Purchase Agreement, and subsequent to the Asset Purchase Agreement, filed for copyright protection in the same UNIX technology covered by SCO's copyrights."[7]

SCO further alleged that "Novell repeatedly claimed publicly in press releases and otherwise that it, and not SCO, owns the UNIX and UnixWare copyrights."[8] SCO alleged that Novell "made such statements with the intent to cause customers and potential customers of SCO to not do business with SCO and to slander and impugn the ownership rights of SCO in UNIX and UnixWare, and to attempt, in bad faith, to block SCO's ability to enforce its copyrights therein."[9] SCO alleged that "Novell's false and misleading representations that it owns the UNIX and UnixWare copyrights has caused and is continuing to cause SCO to incur significant

---

[5]SCO later filed Amended and Second Amended Complaints. These amended Complaints do not alter the Court's analysis as Vigilant based its denial on the original Complaint.

[6]Docket No. 19, Ex. 3 at ¶ 1.

[7]*Id*. at ¶ 4.

[8]*Id*. at ¶ 5.

[9]*Id*. at ¶ 6.

irreparable harm to its valuable UNIX and UnixWare copyrights, to its business, and its reputation."[10]

In paragraph 18 of its Complaint, SCO alleged:

Novell, with full knowledge of SCO's exclusive ownership of the copyrights related to UNIX and UnixWare, has embarked on a malicious campaign to damage SCO's ability to protect its valuable copyrights in UNIX and UnixWare. In particular, Novell has wrongfully asserted ownership over UNIX and UnixWare technologies by filing for copyright protection in its own name, and has made numerous false and misleading public representations disparaging SCO's ownership of the UNIX and UnixWare copyrights and claiming that it, and not SCO, owns the Unix and UnixWare copyrights.[11]

The Complaint goes on to detail those statements.[12]

SCO alleged that "Novell's false oaths and wrongful claims of copyrights and ownership in UNIX and UnixWare are in bad faith and constitute a knowing and intentional disregard for the truth."[13]

As stated, SCO brought a single claim for slander of title alleging:

Novell has slandered SCO's title and rights to its UNIX and UnixWare copyrights and damaged SCO's business reputation and relationships with potential customers by making false oaths of ownership to public officials, and by repeatedly representing both to the public in general and directly to several of SCO's customers and potential customers that Novell, and not SCO, owns the UNIX and UnixWare copyrights.[14]

---

[10]*Id.* at ¶ 7.

[11]*Id.* at ¶ 18.

[12]*Id.* at ¶ 19.

[13]*Id.* at ¶ 20.

[14]*Id.* at 24.

SCO alleged that "Novell's conduct . . . was intentionally and maliciously designed to destroy SCO's valuable rights to the UNIX and UnixWare copyrights and further destroy SCO's business livelihood."[15] SCO sought actual and special damages, punitive damages, a preliminary and permanent injunction, attorneys' fees, costs, and pre- and post-judgment interest.

B.  THE VIGILANT POLICIES

Vigilant and Novell entered into a general liability insurance contract, effective from November 1, 2002 to November 1, 2003, then renewed to November 1, 2004 (the "policies"). The policies provide, in pertinent part:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
> - imposed by law; or
> - assumed in an **insured contract**;
> 
> for **advertising injury** or **personal injury** to which this coverage applies.[16]

The policy further states:

> **Personal injury** means injury, other than **bodily injury, property damage** or **advertising injury**, caused by an offense of:
> 
> * * * *
> 
> D.  electronic, oral, written or other publication of material that:
>   1. libels or slanders a person or organization (which does not include disparagement of goods, products, property or services) . . . .[17]

With respect to advertising injury and personal injury, the policy contains an exception for "Expected or Intended Injury." That exclusion provides:

---

[15]*Id.* at 27.

[16]Docket No. 19, Ex. 1 at 3.

[17]*Id.* at 30.

5

This insurance does not apply to **advertising injury** or **personal injury** arising out of an offense, committed by or on behalf of the **insured**, that:
- is intended by such **insured**; or
- would be expected from the standpoint of a reasonable person in the circumstances of such **insured**;

to cause injury.[18]

The policy also contains an "Intellectual Property Laws or Rights" exclusion. That exclusion states:

This insurance does not apply to any actual or alleged **bodily injury**, **property damage**, **advertising injury** or **personal injury** arising out of, giving rise to or in any way related to any actual alleged:
- assertion; or
- infringement or violation;

by any person or organization (including any **insured**) of any **intellectual property law or right**, regardless of whether this insurance would otherwise apply to all or part of any such actual or alleged injury or damage in the absence of any such actual or alleged assertion, infringement or violation.
This exclusion applies, unless such injury:
- is caused by an offense described in the definition of **advertising injury**; and
- does not arise out of, give rise to or in any way relate to any actual or alleged assertion, infringement or violation of any **intellectual property law or right**, other than one described in the definition of **advertising injury**.[19]

The policy defines "intellectual property law or right" as any:

- certification mark, copyright, patent or trademark (including collective or service marks);
- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;
- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or

---

[18]*Id*. at 14.

[19]*Id*. at 17.

6

- other judicial or statutory law concerning piracy, unfair competition or other similar practices.[20]

C. VIGILANT'S DENIAL

Novell provided notice of the SCO action to Vigilant in early 2004. Novell requested that Vigilant defend Novell in the SCO action and provided Vigilant a copy of SCO's Complaint.

Vigilant denied a defense on February 11, 2004. In its letter denying a defense, Vigilant stated:

> It is Vigilant's position that the allegations and damages set forth by SCO Group, Inc. would not constitute bodily injury or property damage as defined by the Policy and for which must arise out of an occurrence, nor has there been an allegation set forth which would give rise to the offense of personal injury or advertising injury. Vigilant has also cited the policy exclusion entitled Intellectual Property Laws or Rights in furtherance of our declination of defense and indemnification.[21]

That letter further stated:

> It is Vigilant's position that SCO Group's contention of Slander of Title with respect to their interests in UNIX and Unix Ware copyrights would not constitute person injury in as much as there has been no libel or slander to a person or organization.
>
> In addition to this, Vigilant directs your attention to the policy exclusion entitled Intellectual Property Laws or Rights. It is our position that this exclusion would be applicable with respect to this copyright issue and would further remove the claims from coverage pursuant to the Commercial General Liability Policy.[22]

---

[20]*Id.* at 27.

[21]Docket No. 19, Ex. 5 at 2.

[22]*Id.* at 5.

7

AON, on behalf of Novell as its broker, took exception to the denial of coverage by Vigilant on March 3, 2004.[23] Vigilant, through counsel, responded to AON on April 27, 2004, and continued in its declination of coverage.[24]

D.  THE INSTANT ACTION

Novell filed the instant action against Vigilant on May 29, 2009. Novell seeks declaratory relief that Vigilant had a duty to defend Novell against the claims asserted in the SCO action under the policies discussed above. Both parties now seek summary judgment on the issue of Vigilant's duty to defend.

## III.  DISCUSSION

"The duty to defend is broader than the duty to indemnify, but the insurer's obligation is not unlimited . . . ."[25] The Utah Supreme Court has explained that "the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy."[26] Conversely, when the allegations, if proven, show "there is no potential liability, there is no duty to defend."[27] As a general rule, "an insurer's duty to defend is determined by comparing the language of the

---

[23]Docket No. 29, Ex. A.

[24]*Id.*, Ex. B.

[25]*Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986).

[26]*Id.*

[27]*Id.* at 1147.

8

insurance policy with the allegations in the complaint."[28] Under Utah law, the Court interprets insurance policies as it would other contracts.[29]

With these principles in mind, the Court turns to the arguments made by the parties. Vigilant argues that it had no duty to defend because the complaint in the SCO action alleged a claim of slander of title, a claim that is not covered by the policies. Further, Vigilant argues that there is no claim for defamation contained in the SCO complaint. Finally, Vigilant argues that two exclusions—the expected or intended injury exclusion and the intellectual property law or right exclusion—bar coverage. Novell argues that the SCO complaint does contain a claim for defamation and that the two exclusions do not bar a defense.

As set forth above, the policies' definition of "personal injury" includes electronic, oral, written or other publication of material that libels or slanders a person or organization, but does not include disparagement of goods, products, property or services. Both parties agree that SCO's claim for slander of title does not implicate Vigilant's duty to defend because it is expressly excluded. Thus, Vigilant would only have a duty to defend if an un-plead, covered claim could be found in SCO's Complaint. Novell argues that SCO's Complaint sufficiently pleads a claim that Novell libeled or slandered SCO, which would constitute a covered claim.

---

[28] *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 560 (Utah 2001) (quotation marks and citation omitted).

[29] *Benjamin v. Am. Mut. Ins. Co.*, 140 P.3d 1210, 1213 (Utah 2006).

For consideration of these issues, it is important to recognize the difference between slander of title and defamation. Slander of title is a type of injurious falsehood.[30] Comment g to the Restatement (Second) of Torts § 623A describes the relationship of injurious falsehood to defamation as follows:

> The action for injurious falsehood is obviously similar in many respects to the action for defamation. Both involve the imposition of liability for injuries sustained through publication to third parties of a false statement affecting the plaintiff. Despite their similarities, however, the two torts protect different interests and have entirely different origins in history. The action for defamation is to protect the personal reputation of the injured party; it arose out of the old actions for libel and slander. The action for injurious falsehood is to protect economic interests of the injured party against pecuniary loss; it arose as an action on the case for the special damage resulting from the publication.
>
> * * * *
>
> Although the torts of defamation and injurious falsehood protect different interests, they may overlap in some fact situations. This happens particularly in cases of disparagement of the plaintiff's business or product. If the statement reflects merely upon the quality of what the plaintiff has to sell or solely on the character of his business, then it is injurious falsehood alone. Although it might be possible to imply some accusation of personal incompetence or inefficiency in nearly every imputation directed against a business or a product, the courts have insisted that something more direct than this is required for defamation. On the other hand, if the imputation fairly implied is that the plaintiff is dishonest or lacking in integrity or that he is perpetrating a fraud upon the public by selling something that he knows to be defective, the personal defamation may be found. In this case, it is common to sue in defamation because the damages are more comprehensive. Action may be brought in the same suit for both torts, however, so long as the damages are not duplicated.[31]

---

[30]*Jack B. Parson Co. v. Nield*, 751 P.2d 1131, 1134 (Utah 1988) (stating that slander of title is also known as injurious falsehood); Robert D. Sack, *Sack on Defamation*, § 13.1.1 (Practicing Law Institute 2007) (explaining that injurious falsehood describes two common law torts: slander of title and disparagement of quality).

[31]Restatement (Second) of Torts § 623A cmt. g.

Utah law also recognizes the difference between slander of title and defamation.

> [D]espite the similarity in the names of the torts, there is a basic distinction between the two. They protect separate and unrelated interests. The tort of slander of title and the related tort of disparagement of property are based on an intentional interference with economic relations. They are not personal torts; unlike slander of the person, they do not protect a person's reputation. Slander of title actions are based only on palpable economic injury and require a plaintiff to prove special damages, whereas injury to personal reputation may be based on both tangible and intangible losses and give rise to presumed and general damages. There are no general or presumed damages in slander of title actions. Special damages are ordinarily proved in a slander of title action by evidence of a lost sale or the loss of some other pecuniary advantage. Absent a specific monetary loss flowing from a slander affecting the saleability or use of the property, there is no damage.[32]

To state a claim for defamation under Utah law, a plaintiff "must show that defendants published the statements concerning him, that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage."[33] There are two types of defamation: libel and slander. Libel is defined as

> a malicious defamation, expressed either by printing or by signs or pictures or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule.[34]

---

[32] *Bass v. Planned Mgmt. Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988).

[33] *West v. Thompson Newspapers*, 872 P.2d 999, 1007-08 (Utah 1994).

[34] Utah Code Ann. § 45-2-2(1).

Slander "means any libel communicated by spoken words."[35]  "To be defamatory under Utah law, a communication must impeach an individual's honesty, integrity, virtue, or reputation or publish his or her natural defects or expose him or her to public hatred, contempt, or ridicule."[36]

Novell argues that SCO's Complaint, though styled as one alleging a claim for slander of title, contains allegations that Novell libeled or slandered SCO's business. In support of this contention, Novell points to various portions of SCO's Complaint where SCO alleged that Novell's statements claiming ownership of the UNIX and UnixWare copyrights caused harm to SCO's business and its reputation. Novell argues that its statements asserting ownership necessarily impugned SCO's business reputation by suggesting to customers that SCO was not being honest about its rights to UNIX and UnixWare.

If read in isolation, the allegations in SCO's Complaint relied upon by Novell may lend credence to Novell's claims. However, these statements must be read in the context of the entire Complaint. The Complaint does not allege that Novell made any direct statements that could be defamatory toward SCO. Rather, the Complaint only alleges that Novell made false claims of ownership to the UNIX and UnixWare copyrights, thus slandering SCO's title to that property. By making these statements, the Complaint alleges Novell damaged SCO's business and reputation. When read in context, SCO's claims do not allege a claim for defamation of SCO. Rather, they show a disagreement between Novell and SCO as to what transferred in the 1995 Asset Purchase Agreement. Because of this disagreement, and the cloud placed upon the title to

---

[35]*Id*. § 45-2-2(2).

[36]*Cox v. Hatch*, 761 P.2d 556, 561 (Utah 1988).

the copyrights, SCO was unable to fully exploit the resources it allegedly owned. It is because of this inability that SCO's business and/or reputation was damaged, not because of any allegedly defamatory statements made by Novell concerning SCO.

Novell's argument that by claiming ownership of the UNIX and UnixWare copyrights it necessarily impugned the honesty and integrity of SCO simply reads too much into the allegations contained in the Complaint. As one court has stated:

> A [pleading] does not contain the "seeds" for a claim of defamation or slander simply because an opposing party considers some of his adversary's accusations untrue. If the denial of accusations by an opposing party were sufficient to suggest a claim for defamation, then every cross-complaint would raise the specter of such claims. After all, all lawsuits contain allegations of wrongdoing, and these allegations are usually denied by an opposing party. The fact that an insurer owes a duty to defend against defamation, slander, or libel does not mean that every denial of an adversary's accusation establishes the insurer's liability.[37]

Further, the focus must be on Novell's alleged actions, not the harms allegedly suffered by SCO.[38] Here, there are no allegations from which the Court could find that Novell defamed SCO. As stated above, the definition of "personal injury" in the policies includes electronic, oral, written or other publication of material that libels or slanders a person or organization. Here, there are simply no allegations in the Complaint that Novell made any statements that could be construed as slandering or libeling SCO. Rather, as discussed, the only allegations in the SCO

---

[37]*Storek v. Fid. & Guar. Ins. Underwriters, Inc.*, 504 F.Supp. 2d 803, 808 (N.D. Cal. 2007).

[38]*See Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1032 (Cal. Ct. App. 2002) ("Coverage for personal injury is not determined by the nature of the damages sought in the action against the insured, but by *the nature of the claims* made against the insured in that action.").

Complaint concerning statements made by Novell pertain to the ownership of the UNIX and UnixWare copyrights.

The cases cited by Novell are distinguishable in that they involve different policy language, different underlying allegations, or both. The policy in *Lime Tree Village Community Club Association, Inc. v. State Farm General Insurance Company*,[39] provided coverage for "the publication or utterance of a libel or slander or other defamatory or disparaging material."[40] Because the policy provided coverage for both defamation and disparagement, there was no discussion of whether the statements actually constituted slander or slander of title. *Nvidia Corporation v. Federal Insurance Company*,[41] involved a policy defining personal injury as "oral or written publication of materials that slanders or libels a person or organization."[42] The court there found that the allegations that Nvidia engaged in a campaign to publicly sabotage, disparage, and destroy another company and that Nvidia falsely stated that the other company was selling pirated or unlicensed goods fell within the terms of this policy.[43] These allegations go beyond merely claiming ownership of copyrights.

---

[39] 980 F.2d 1402 (11th Cir. 1993).

[40] *Id*. at 1404.

[41] 2005 WL 2230190 (N.D. Ill. Sept. 6, 2005).

[42] *Id*. at *1.

[43] *Id*. at *8.

In *Aurafin-Oroamerica, LLC v. Federal Insurance Company*,[44] the Ninth Circuit found that a claim for true libel could be found where there was an allegation that claimant "was a patent infringer—a pejorative allegation of shady business practices . . . ."[45]  Similarly, the court in *Amerisure Insurance Company v. Laserage Technology Corporation*,[46] held that "wrongfully asserting that a competitor's product infringes patents clearly defames the competitor and disparages his product."[47]  Here, there are no allegations that Novell ever claimed that SCO infringed Novell's patents.  Further, a claim of copyright ownership is not a pejorative allegation and is, therefore, different than a claim of patent infringement.

*Western International Syndication Corporation v. Gulf Insurance Company*,[48] involved a policy defining personal injury as oral or written publication "disparag[ing] a person's or organization's goods, products, or services."[49]  Similarly, the policy in *Liberty Mutual Insurance Company v. OSI Industries, Inc.*,[50] defined the term personal injury as "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or

---

[44]188 Fed.Appx. 565 (9th Cir. 2006).

[45]*Id*. at 566.

[46]2 F. Supp.2d 296 (W.D.N.Y. 1998).

[47]*Id*. at 304.

[48]222 Fed.Appx. 589 (9th Cir. 2007).

[49]*Id*. at 592.

[50]831 N.E.2d 192 (Ind. Ct. App. 2005).

15

organization's goods, products, or services."[51] The policies at issue in those cases allowed for claims based on product disparagement and the respective courts found a duty to defend based upon that language. The policy at issue here contains an express statement that it does not include disparagement of goods, products, property or services.

Novell also directs the Court's attention to *Atlantic Mutual Insurance Company v. J. Lamb, Inc*. The policy at issue in that case defined personal injury as "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."[52] In the underlying action, "Continental alleged that Lamb had falsely stated to Continental's customers that Continental's products were burdened with a prior legal right and their purchase of such products would subject them to litigation."[53] The court held that such allegations "clearly constituted a publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general."[54] Thus, the court held that the statements were disparaging, but did not consider whether they were defamatory.[55] Here, the policies at issue do not cover disparagement.

For all of the reasons discussed above, the Court finds that SCO's Complaint does not allege any conduct which would come within the definition of personal injury as defined by the

---

[51]*Id*. at 199.

[52]100 Cal.App.4th at 1025 n.4.

[53]*Id*. at 1034-35.

[54]*Id*. at 1035 (quotation marks omitted).

[55]*Id*. at 1035 n.13.

policies. The allegations in SCO's Complaint show a business dispute concerning copyright ownership. There are no allegations from which the Court could find that Novell made any electronic, oral, written or other publication of material that impeached SCO's honesty, integrity, virtue, or reputation. As a result, there are no allegations of libel or slander of SCO and Vigilant had no duty to defend Novell in the SCO action. Summary judgment in favor of Vigilant and against Novell is, therefore, appropriate. Because of this ruling, the Court need not determine whether either of the two exclusions advanced by Vigilant would similarly bar coverage.

## IV. CONCLUSION

It is therefore that Novell's Motion for Partial Summary Judgment (Docket No. 17) is DENIED. It is further

ORDERED that Vigilant's Motion for Summary Judgment (Docket No. 27) is GRANTED.

The Clerk of the Court is directed to enter judgment in favor of Vigilant and against Novell and close this case forthwith. The hearing set for May 18, 2010 is STRICKEN.

DATED April 27, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge